IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DEBORAH BUSH, et al.,

      Plaintiff,

v.                                 CASE NO. 5:13-cv-369-RS-GRJ

GULF COAST ELECTRIC
COOPERATIVE.,

      Defendant.

_____/

# O R D E R

      Pending before the Court is Defendant's Motion for Rule 37(c)(1) Sanctions. Doc. 73.  Plaintiffs filed a Response to Defendant's Motion And Plaintiff's Demand for Fees Pursuant to 28 U.S.C. § 1927 & Fed.R.Civ.P. 37.  Doc. 78.  The Court conducted an expedited telephonic hearing on May 22, 2015. However, because counsel for the parties presented conflicting information at the hearing as to whether Plaintiffs had served their Rule 26(a)(1) Initial Disclosures the Court directed the parties to file declarations supporting their respective positions. The parties have now filed declarations in support of their respective positions, Docs. 84 & 85, and therefore Defendant's motion for sanctions is ripe for consideration.[1]

## DISCUSSION

      Defendant requests the Court to strike the testimony of Mary Linda Louise

---

[1] Plaintiffs also have filed a Motion for Leave to File Supplemental Memorandum. Doc. 86. Although Defendant opposes the request, because the Court has considered Plaintiffs' Supplemental Memorandum in ruling on the motion for sanctions, Plaintiffs' Motion for Leave to File Supplemental Memorandum is due to be granted.

Skipper ("Skipper"), filed in support of Plaintiffs' response to the pending motion for summary judgment, as a sanction for failing to disclose her identity previously. Defendant represents that the Plaintiffs never served Rule 26(a)(1) initial disclosures and thus failed to disclose the identify of Skipper as a material witness. Additionally, Defendant argues that the testimony of Skipper should be excluded because Plaintiffs failed to identify Skipper as a witness in their answers to interrogatories and failed to supplement their answers to interrogatories after Skipper's sworn statement was taken.

To resolve Defendant's motion the Court must address several disputed issues. First, the Court must determine whether Plaintiffs failed to serve their Rule 26(a)(1) Initial Disclosures. Second, the Court must determine whether Plaintiffs' failure to list Skipper as a witness in their answers to interrogatories is sufficient to support the exclusion of Skipper's testimony. Third, the Court must determine whether Plaintiffs had a duty to supplement their answers to interrogatories and, if so, whether the failure to do so warrants the exclusion of Skipper's testimony. Lastly, assuming Plaintiffs either failed to serve their Rule 26(a)(1) Initial Disclosures or failed to supplement their answers to interrogatories the Court must address whether Plaintiffs failure to do so was substantially justified or harmless so that exclusion of Skipper's testimony is not required.

Before resolving these issues, a brief chronology of the material and undisputed events is necessary. This case was removed to this Court in November 2013.  On January 31, 2014 Defendant served Plaintiffs with its First Set of Interrogatories and First Request for Production of Documents. Plaintiff did not serve timely responses to Defendant's discovery requests.  Four months later on June 2, 2014 the Court stayed

*Case No: 5:13-cv-369-RS-GRJ*

the case for 180 days and extended all of the pretrial deadlines accordingly.  Once the case was reactivated and Defendant realized that Plaintiffs had not served their responses to Defendant's discovery requests, Defendant's counsel emailed Plaintiff's counsel on January 27, 2015 requesting Plaintiffs to provide responses by February 18, 2015 to Defendant's outstanding discovery requests.[2]   Three days later on January 30, 2015 Defendant's counsel requested Plaintiffs' counsel to expedite the response and provide the responses by February 4, 2015.  When no responses had been served, Plaintiffs' counsel on February 18, 2015 demanded responses and advised that is responses were not provided Defendant would seek court intervention.  Finally, when no responses were provided, Defendant made a final demand on March 3, 2015 for discovery responses. Two days later on March 5, 2015 Defendant's counsel advised Plaintiffs' counsel that Defendant did not have Plaintiffs' Rule 26(a)(1) Initial Disclosures, which had been due in January 2014, and requested that counsel provide the Initial Disclosures "soon."  Plaintiffs' counsel never responded to Defendant's March 5, 2015 email.

While the record does not contain evidence of the date Plaintiffs served their answers to Defendant's interrogatories, the answers were signed[3] on March 5, 2015, and therefore the Court assumes the answers were served on that date or shortly thereafter.[4]  Notably, Plaintiffs did not list Skipper as a witness in response to

---

[2] Doc. 73, Ex. A.

[3] The answers were not signed under oath, as required by Rule 33(b)(3) but instead were simply acknowledged (but not sworn) before a Florida Notary Public.

[4] Doc. 73, Ex. C.

interrogatory no. 5, which required Plaintiffs to identify "all persons that Plaintiff and/or her attorney believe(s) may have any knowledge or information concerning the facts and circumstances surrounding the incidents described in the complaint."  This is a standard interrogatory, included in most civil cases, which is designed to insure that material witnesses are identified so that counsel can determine whether discovery or investigation needs to be initiated with regard to those witnesses.

Even though Skipper was not identified by Plaintiffs as a material witness, nineteen days later on March 24, 2015, Plaintiffs' counsel took a sworn statement from Skipper. After the sworn statement was taken Plaintiffs never supplemented their answers to Defendant's interrogatories by disclosing Skipper as a witness with knowledge of the facts and circumstances in this case.

On April 21, 2015 Defendant filed its motion for summary judgment. Doc. 55.  On May 13, 2015 Plaintiffs filed their response to Defendant's motion for summary judgment. Doc. 66.[5]  As part of their opposition to Defendant's motion for summary judgment, Plaintiffs filed Skipper's sworn statement. Doc. 64, Ex. 36. In their opposition to Defendant's motion for summary judgment, Plaintiffs rely in part on Skipper's sworn statement.[6]

Turning first to the issue of whether Plaintiffs served their Rule 26(a)(1) Initial Disclosures, the parties have filed affidavits in support of their respective positions.

---

[5] Plaintiffs filed a corrected response on May 15, 2015. Doc. 70.

[6] In their opposition to Defendant's motion for summary judgment, Plaintiffs rely upon Skipper's sworn statement a number of times in their Statement of Disputed Material Facts as evidence supporting their claims or as evidence that there is a material issue of fact concerning some of the claims. *See, e.g.* Doc. 65, pp. 2, 4-6, 8, 11, 15-17.

Defendant has filed the affidavits of Robert Larkin, III, Matthew D. Stefany, J. Patrick Floyd, Chris Wygle, J. Wes Gay and Mike Watson.  Larkin is the partner in charge of this case,  Stefany, and Gay are the associate attorneys who have worked on this case and Floyd has served as co-counsel for Defendant. Wygle is the administrative assistant for Larkin and Gay and Watson is the IT Director of Larkin's firm.  The affidavits collectively demonstrate that none of the attorneys from Allen Norton & Blue received any email communications from Plaintiff's counsel on March 6, 2014 or thereafter transmitting the Initial Disclosures. Further, the affidavits conclusively demonstrate that there is no record of any of Defendant's counsel receiving the Initial Disclosures.

In support of their position that the Initial Disclosures were served, Plaintiffs have filed the affidavits of Marie A. Mattox, the partner responsible for handling this case, the affidavits of Lauren F. Strickland and Jamie Kimbrell, two associate attorneys who worked on this case, and the affidavit of Michelle Chaaban, the paraprofessional in charge of scheduling for all attorneys at Ms. Mattox's law firm.  The affidavits collectively provide the following facts. The practice of attorneys in Ms. Mattox's firm is to only place the hard copy of a document in the file and not a draft. The file in this case contains a hard copy of the Initial Disclosures and therefore that means a hard copy was prepared and given by Ms. Stickland, the responsible attorney in March 2014, to the paralegal for mailing. Further, it was the regular practice of attorneys at Ms. Mattox's office, including the regular practice of Ms. Strickland, to sign documents electronically, even though the documents were not required to be filed in court. Ms. Stickland avers that it was her practice in all cases to give the final draft of Rule 26

Disclosures to her paralegal for mailing and that even though the certificate of service does not identify Defendant's counsel, her paralegal would have known, nonetheless, to whom to mail the Initial Disclosures. Ms. Kimbrell avers that she did not respond to Mr. Gay's March 5, 2015 email inquiring about the status of the Initial Disclosures because she reviewed the electronic file and "saw that the document [Initial Disclosures] had been created nearly a year earlier on March 12, 2014 and satisfied myself that the disclosures had been sent at that time based on the fact it had been electronically signed by Lauren F. Strickland." Doc. 83, Ex. C.

There are, however, several inconsistencies and omissions in the affidavits that cast some doubt on whether the Initial Disclosures were actually sent to Defendant's counsel. The most glaring inconsistency is that the copy of the Rule 26(a)(1) Initial Disclosures, Plaintiffs have attached to their Response, Doc. 78-1, Ex. A, bears an incomplete certificate of service[7] representing that it was sent by both email and U.S. mail on March 6, 2014, while in contrast Ms. Kimbrell avers that the computer file she checked to ensure the Initial Disclosures had been served evidenced that the Initial Disclosures was created on March 12, 2014—six days *after* the Initial Disclosures were allegedly mailed. Common sense dictates that the Initial Disclosures could not have

---

[7] N.D. Fla. Loc. Rule 5.1(D), which addresses the form for a certificate of service, provides in relevant part that:

> After another party has entered an appearance in the case, each document submitted for filing shall be accompanied by a certificate of service (1) signed by an attorney of record ... certifying that a copy of the document has been served upon all other parties who have Appeared, and (3) specifying the date and method of such service (for example, by Notice Electronic Filing, by First Class mail, by hand delivery, or by other means).

The certificate of service on the Initial Disclosures fails to comply with this Rule because it does not include a certification that it has been served upon all other parties who have appeared. As such there is no presumption that the certificate of service means the document was served.

been mailed before the document was created.

Furthermore, while Ms. Strickland avers that she "would have directed [the paralegal] to mail [the Initial Disclosures] to Defendant's counsel," Ms. Kimbrell's affidavit is silent as to whether the Initial Disclosures were sent by email as well, as represented in the certificate of service.

There are also glaring gaps in the affidavits. While the affidavits recite the practice of creating and mailing documents at Ms. Mattox's office, none of the affiants affirmatively aver that she personally sent the Initial Disclosures. While the Court recognizes that memories from March 2014 may have faded, the only averment containing personal knowledge is Ms. Strickland's statement that "she personally worked on [the Initial Disclosures] with both Plaintiffs" in February and March 2014. The issue, however, is not whether the Initial Disclosures were prepared but whether they were served.  In the final analysis while these inconsistencies cause the Court to have serious concerns as to whether the Initial Disclosures were served, the Court cannot resolve this issue on this evidentiary record.  The Court, however, can resolve the motion based upon the remaining record, which is not disputed.

Even assuming the Initial Disclosures were sent (at some point in 2014) the disclosure of Skipper as a witness was very general. Plaintiffs represented that Skipper was Bush's former supervisor (a fact known to everyone) and that Skipper has knowledge of Bush's work performance (a fact that also is not surprising) and "may have other knowledge of the claims and defenses in this lawsuit."  Making a general disclosure of a witness in an Initial Disclosure is both common and appropriate. There

is nothing in the disclosure that would alert the opposing party that Skipper had material information.  Defendant served interrogatories, however, to make sure that Plaintiffs identified witnesses with knowledge and identified the knowledge the witnesses possessed. These types of interrogatories are propounded in almost all cases to avoid exactly what happened in this case—a surprise witness is identified after the close of discovery.

Consequently, when Plaintiffs provided their answers to interrogatories on or around March 5, 2015, Plaintiffs had an affirmative obligation to identify Skipper as a witness. This Plaintiff failed to do. Assuming, however, that on March 5, 2015, when Plaintiffs signed the answers to interrogatories that they did not know Skipper would provide testimony and did not know what Skipper would say, there was no question that on March 24, 2015, when Skipper gave her sworn statement, that Plaintiffs' counsel knew full well then that Skipper was a material witness and knew exactly what knowledge Skipper had.  At that point there is no question that Plaintiffs had an obligation pursuant to Rule 26(e) of the Federal Rules of Civil Procedure to supplement their answer to interrogatory no. 5 in a timely manner.[8]  Thus, Plaintiffs' failure to supplement their answer to interrogatory no. 5 by identifying Skipper as a witness and by identifying the knowledge she possessed, violated the affirmative obligation to supplement in Rule 26(e).

Plaintiffs contend that there was no duty to supplement because Skipper's name was mentioned during Bush's March 16, 2015 deposition. Rule 26(e)(1)(A) provides

---

[8] Rule 26(e) provides in relevant part that "[A] party who has ... responded to an interrogatory ... must supplement or correct its disclosure or response."

that there is no duty to supplement where the information is made known to the other party during the discovery process. Thus, where a previously undisclosed witness is identified during a deposition there is no obligation to supplement the previous discovery responses. Advisory Committee Notes to the 1993 revisions to Rule 26.  The issue, here, is not whether Defendant knew of Skipper. That is undisputed—Skipper worked for Defendant for 41 years and thus Defendant knew her. But Defendant had no idea—nor would it—that Skipper, who retired before the events in this case occurred, would be a material witness.  Further, it is perfectly understandable that Defendant would not know Skipper would be a witness in view of the fact that just two weeks before Bush was deposed Plaintiffs served their answers to interrogatories, which did not identify Skipper as a witness. At her deposition Bush testified that Skipper was her previous boss and was training Justin Barnes to be an assistant to Skipper and Bush, Doc. 73, Ex. D., p. 24, and that Skipper told Bush that Justin Barnes was paid more than Bush and less than Skipper. *Id.,* p. 120.  These were the only references concerning Skipper at the Bush deposition.  There is nothing disclosed in that testimony that would place Defendant on notice that Skipper was a material witness or that Skipper was expected to provide testimony concerning the matters contained in her sworn statement. Consequently, the fact that Bush mentioned Skipper at her deposition is insufficient to demonstrate that the information was made known to the other party during the discovery process. Accordingly, the Court concludes that Plaintiffs had an obligation to supplement their interrogatory answers pursuant to Rule 26(e).

Where a party, as here, fails to provide information that should have been

provided under Rule 26(e), Rule 37(c)(1) is triggered.  Rule 37(c)(1) provides in relevant part that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  The exclusion of such information or witnesses is an "automatic sanction" that "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion . . ." FED. R. CIV. P. 37(c)(1) advisory committee's note.  Rule 37(c) also provides that, instead of excluding the information or witness, a court may also order the payment of reasonable expenses caused by the failure, inform the jury of the party's failure, or a number of other sanctions.

In determining whether to exclude the testimony of a non-disclosed witness the Court must consider three factors: "(1) the importance of the testimony; (2) the reason for the [plaintiff's] failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness ... [is] allowed to testify."  *Pete's Towing Co. V. City of Tampa, Fla.,* 378 Fed. Appx. 917, 920 (11th Cir. 2010).

While Skipper does not have direct knowledge of what occurred after she retired from her position with Defendant, her testimony, nonetheless, is relied upon by Plaintiffs in opposing Defendant's motion for summary judgment so to that extent Skipper's testimony is important.

With regard to the reason Plaintiffs failed to disclose Skipper as a witness earlier, assuming *arguendo* that the Initial Disclosures were never served, there is no question

that any failure to do so would have been inadvertent and unintentional. The situation is different, however, regarding Plaintiffs' failure to identify Skipper in their answers to interrogatories or at least in failing to supplement their answers to interrogatories after they had taken Skipper's sworn statement and knew the substance of Skipper's testimony. The failure to supplement the answers to interrogatories was not excusable and essentially allowed Plaintiffs to present a surprise witness after discovery had concluded. "That is not how civil litigation works. Discovery is not a game of 'blind man's bluff' ... or 'hide the ball.'" *Parrish v. Freightliner,* 471 F. Supp. 2d 1262, 1270 (M.D. Fla. 2006)(citations omitted).

Lastly, with regard to prejudice to the Defendant, the Defendant has been placed in the untenable situation of having an undisclosed witness offered in response to their pending motion for summary judgment, with a final pretrial conference scheduled on June 1, 2015 and trial scheduled to commence on June 8, 2015.  In most situations where there is an undisclosed witness the Court would direct the party who failed to disclose the witness to make the witness available immediately for deposition even though the discovery deadline has ended. The Court cannot do so here because the final pretrial conference is scheduled six days from now and the trial is scheduled for the following week. If the Court was to reopen discovery so that Defendant could depose Skipper a continuance of the final pretrial conference and trial would be a certainty.  Resolution of this case already has been substantially delayed by the stay in this case and thus a further continuance would be contrary to the dictates of Rule 1 of the Federal Rules of Civil Procedure, which is to ensure the "just, speedy and

inexpensive determination of every action and proceeding."  Consequently, the Court concludes that because of the prejudice to Defendant—and the unavailability of other means to avoid the prejudice—the sanction of striking the affidavit of Skipper is warranted.

Rule 37(c)(1) provides, however, that sanctions may not be warranted where the non-compliant party can show that its failure to comply with the Rule was either justified or harmless.  *Finley v. Marathon Oil Co.,* 75 F. 3d 1225, 1230 (7th Cir. 1996)("The sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show that its violation of [the Rule] was either justified of harmless."). The burden of establishing that non-disclosure is substantially justified or harmless is on the party who failed to disclose the information.  *Wilson v Bradlees of New England, Inc.,* 250 F. 3d 10, 20-21 (1st Cir. 2001)("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with the Rule was either justified or harmless ... ". "Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance." *Wright v Hyundai Motor Manufacturing Alabama, LLC,* No. 2:08CV61-SRW. 2010 WL 4739486, at *4 (M.D. Ala. Nov. 16, 2010)(*citing* Nguyen v IBP, Inc., 162 F.R.D. 675, 680 (D. Kan. 1995); *Pierce v Underwood,* 487 U.S. 552 (1998)).

Plaintiffs advance several theories in support of their claim that the failure to

disclose was harmless. First, Plaintiffs argue that because Defendant did not depose any other non-party witnesses, even if Skipper had been disclosed, Defendant would not have deposed her. Plaintiffs secondly point to the fact that Defendant never deposed non-party witness Kaci Rhodes despite the fact that she was properly disclosed. Plaintiffs last point to other cases in which Defendant's counsel has elected not to depose non-party witnesses listed in initial disclosures and other discovery responses. Plaintiffs then surmise that because Defendant's counsel did not depose these other witnesses, Plaintiffs have demonstrated that the failure to disclose was harmless.

This argument misses the point. While there may be a myriad of reasons why Defendant's counsel has not deposed other non-party witnesses in this case, including Kaci Rhodes, Defendant was deprived of the opportunity of making that determination with regard to Skipper.  With regard to Kacie Rhodes, her testimony was disclosed in Bush's answers to interrogatories so that the Defendant knew what her knowledge was and could decide whether it needed to depose her. Plaintiff's failure to disclose the subject matter of Skipper's testimony, on the other hand, deprived Defendant of making that determination. Defendant represents that had it known about the testimony of Skipper it would have deposed her. At the very least had Defendant known about Skipper's anticipated testimony Defendant could have conducted further investigation and prepared its argument and evidence accordingly when it filed its motion for summary judgment. Instead, Defendant has been placed in the position of having to deal with an undisclosed surprise witness, after discovery has concluded and after

Defendant has prepared and filed its motion for summary judgment. Where, as here, a party prepares its motion for summary judgment without knowledge of a potential witness, the failure to disclose the witnesses is not harmless. *Wright,* 2010 WL at, *5 ("[s]ince defendant prepared its summary judgment submission without knowledge of the identify of these two witnesses, the court cannot conclude that plaintiff's failure to comply with his disclosure obligation is harmless.")

Lastly, *Dukes v Wal-Mart,* 222 F.R.D. 189, 199 (N.D. Cal. 2004), cited by Plaintiffs to support their "Defendant would not have deposed Skipper anyway" argument is not very instructive.  In *Dukes* the Court declined to enter sanctions against Wal-Mart for failing to disclose 215 Wal-Mart store managers because plaintiffs never indicated that they would have deposed 215 Wal-mart store managers if given the chance nor did the plaintiffs there explain how the inability to depose the store managers harmed them. In contrast the Defendant here represents unequivocally that it would have deposed Skipper, if she had been disclosed. And as discussed above Defendant has been prejudiced because the disclosure of Skipper through the filing of her sworn statement has been made after the close of discovery, after Defendant's filed their motion for summary judgment and on the eve of trial.

Plaintiffs alternatively argue that if insufficient disclosures can be cured (i.e. made harmless) without prejudice, that is the preferred remedy. Plaintiffs say that this can be accomplished by reopening discovery for a deposition of Skipper. While the Court agrees that doing so could cure the prejudice, as previously discussed, reopening discovery would result in a continuance of the final pretrial conference and trial, which

would unnecessarily prolong the case. In short, unless the district judge continues the final pretrial conference and trial for some other unrelated reason, there is simply no opportunity to cure the non-disclosure.

Accordingly, upon due consideration, it is **ORDERED:**

1.   Defendant's Motion for Rule 37(c)(1) Sanctions, Doc. 73, is **GRANTED**.

2.   The sworn Statement of Mary Linda Louise Skipper, dated March 24, 2015, Doc. 64-21, Ex. 36, is **STRICKEN**.[9]

3.   Because the Court has considered Plaintiffs' supplemental memorandum in ruling on Defendant's Motion for Sanctions, Plaintiffs' Motion for Leave to File Supplemental Memorandum in Opposition to Defendant's Motion for Rule 37(c)(1) Sanctions, Doc. 86, is **GRANTED**.[10]

**DONE AND ORDERED** this 27th day of May, 2015.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

---

[9] And to the extent that Plaintiffs demand fees in their response pursuant to 28 U.S.C. § 1927, the request is **DENIED**.

[10] Counsel is reminded that pursuant to N.D. Fal. Loc. R. 7.1(C)(2) no reply memorandum should be filed until leave of court is granted.